Stanley Gartenstein, J.
The court has rendered an emergency decision from the bench authorizing surgery for one of the subject children in the within neglect proceeding. It now takes the unusual step of issuing the within opinion subsequent thereto for the purpose of calling attention to the need for clarifying legislation.
The within proceeding is framed on a seven-year period of abandonment by the natural mother. Neither parents’ whereabouts are known. All but one of the subject children are paroled to a maternal aunt who has had de facto custody and acted as psychological parent for a number of years. The child Sheline, now almost 16, is under the custody of the Commissioner of Social Services, having been remanded by court order for shelter. A warrant is outstanding for the respondent mother and the trial and/or inquest has not as yet been held. The children are represented by a law guardian who has appeared at all stages of the proceedings.
On January 23, 1976, the commissioner requested permission to calendar this application for leave to have an ovarian cyst surgically removed from the child Sheline now on remand to him for shelter, based on the fact that any delay would *20 occasion grave danger to her life. Faced with the possibility of Sheline’s imminent death and the corresponding need for emergency court action balanced against minimum standards of due process as regard notice and hearing, the court found itself in a dilemma occasioned by virtual silence as to required notice to litigants and interested parties. With the whereabouts of both parents unknown, the court granted permission to add this application to its calendar and directed the Corporation Counsel to issue a summons returnable forthwith for the child’s de facto guardian. At the emergency hearing, the application was granted on its merits based upon testimony of the attending physician and an order signed immediately.
The first order of legislative business as regards a situation of this type must be enactment of appropriate guidelines and standards as to notice and timeliness of same. Aside from this consideration, the statutory scheme would appear to be inconsistent internally.
Section 383-b of the Social Services Law, enacted in 1972, reads as follows:
"Medical treatment for abused or neglected children; consent of commissioners.
"The local commissioner of social services or the local commissioner of health may give effective consent for medical, dental, health and hospital services for any child who has been found by the family court to be an abused child or a neglected child or who has been taken into or kept in protective custody or removed from the place where he is residing, pursuant to section four hundred seventeen of this chapter or section one thousand twenty-two or section one thousand twenty-four of the family court act.”
It is clear from this statute that the commissioner may authorize surgery without court approval prior to the filing of a petition framed in neglect or abuse where the child has been removed either with or without a court order; or after a finding of neglect or abuse under article 10 of the Family Court Act. This specifically omits instances such as the one at bar where a petition has already been filed and a finding not yet made. Conceding the Legislature’s unquestioned right to make this classification, the rationale underlying it is puzzling. If it was the intent of the Legislature to have the commissioner exercise his own consent in emergency situations where he has the child in order to eliminate dangerous *21 time lags occasioned by resorting to the court, it should be obvious that an emergency does not become less such at different stages of court proceedings. Additionally, setting aside the pragmatic consideration and turning to strict legalities, if the Legislature intended to have the commissioner’s right to consent exercised in emergencies prior to the vesting of jurisdiction in the court as one might presume from its granting this right prior to petition, it becomes illogical to have it exercised after finding where no question can exist as to the court’s jurisdiction. On the other hand, if granting him this right after finding is predicated on reasoning that a basis now exists to believe that the remand will ripen legally into a final order of placement, then the existence of this right after emergency removal and prior to filing of the petition becomes questionable.
Whatever rationale the Legislature used, it is illogical to grant the commissioner the right to exercise his own consent for treatment at both ends of the litigation process and force him to look to the court during its middle stages.
The child herein is now safe because everyone acted with diligence. This does not obfuscate the fact that all concerned in similar future circumstances may not be as fortunate and that any delay occasioned by resort to court proceedings may contribute to already present danger to the child’s life. Presumably, the statute was enacted to eliminate this delay.
Legislative reconsideration of the present statutory scheme would therefore appear to be most appropriate.